## SACRAMENTO SUBURBAN FRUIT LANDS CO. v. HAENGGI.

Circuit Court of Appeals, Ninth Circuit.
December 17, 1929.

Motion for Modification of Opinion Denied January 13, 1930.

No. 5678.

Butler, Van Dyke & Desmond, of Sacramento, Cal., and Arthur C. Huston, of Woodland, Cal., for appellant.

Ralph H. Lewis and George E. McCutchen, both of Sacramento, Cal., for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

DIETRICH, Circuit Judge. In its background this case is like Sacramento Suburban Fruit Lands Co. v. Melin (C. C. A. No. 5671) 36 F.(2d) 907, this day decided. Several assignments are relied upon by appellant, but we deem it necessary to refer to only those which have to do with instructions

924

relative to "commercial orcharding," a subject briefly commented upon in the Nelson Case (C. C. A. No. 5683) 36 F.(2d) 929, this day decided.

In addition to the consideration suggested in the Nelson Case, it is important to note that in the complaint here there is no averment of a representation by defendant touching the profits that would or could be realized from the raising of fruit upon the land in question or any other land. The representations alleged are: "That all of the land thereof was rich and fertile and was capable of producing all sorts of farm crops and products; that said land was entirely free from all conditions and things injurious or harmful to the growth of fruit-trees; that said land was perfectly adapted to the raising of fruits of all kinds; and that said land was capable of producing large crops of any kind of fruit planted thereon; and that said crops were of the finest quality." And it is further alleged that these representations were false, in that it is not true "that any of said land was fertile and/or would produce any crops in commercial quantities and/or was at all adapted to the growing of fruits or fruit-trees and/or that trees of any kind would grow, thrive or flourish thereon." Though, in the light of the testimony, highly extravagant, it will be seen these averments make no reference to the probable or possible profitableness of fruit raising, and, as suggested in the Nelson Case, "profitableness" involves many factors, a very important one of which is market value, which is necessarily the subject of speculation or prophecy. But the theory upon which the court submitted the case to the jury was that the defendant represented that fruit raising upon the land would be profitable. In the course of the instructions, the jurors were advised: " "So the orchard must live long enough not only to discharge that overhead for the unproductive years when it is being brought into production, but to live long enough to pay that and pay a profit on the balance of the time also to make it the whole time a profitable venture or it is not a commercial orchard enterprise. · * · * · What is meant by commercial orcharding? It means the same as in any other enterprise, that that enterprise as a whole with reasonable care and diligence will produce, in this instance crops—reasonable crops in quality and quantity that with normal conditions of the market, that will return a profit over the series of years that the orchard ought to live and a profit on the whole enterprise, the same as a merchant in business or any

other business man. It must carry the overhead, must carry the expense and return a profit on the whole under normal market conditions." But, as will be seen from an analysis of the averment above quoted, the representations alleged had to do only with the quantity and quality of the fruit that could be grown upon the land. The only averment of falsity, where the term "commercial" is used, is to the effect that it was not true that the land would produce fruit in "commercial quantities." Not only were the jurors advised, in effect, that to measure up to the representations the land must be capable of being profitably devoted to orcharding under "normal market conditions," but they were left to speculate as to what is meant by "normal" market conditions.

· The consideration was emphasized in other parts of the instructions, which, on the whole, were argumentative in form. For example, J. S. McNaughton, called as a witness for defendant, explained that he was in the employ of the defendant as its horticultural adviser, and, after referring to certain experiences and to other lands, he testified on direct examination: "That type of soil is the same as the soil in Rio Linda, and the depth of the soil and the hard-pan condition is the same. There is no reason, in my opinion, why figs could not be grown commercially and successfully, as far as production is concerned and disregarding market conditions, in Rio Linda; particularly is this true on the Haenggi place and the Stern place. I think figs could be grown commercially and successfully there if the land be prepared and proper care and irrigation given." On cross-examination he testified: "There has not been any fruit orchard profitable to the owner at Rio Linda. There have been very little figs sold off hard-pan land there. I base my opinion on the growth of the trees. I don't think the hard-pan in Rio Linda would militate against raising good fig crops." On redirect he stated: "When I say the orchards out there are not commercially profitable I have reference to the market conditions which have been very poor the last ·few years. That condition is not localized in Rio Linda, but is true all over the State." The intent of the witness, upon direct, upon cross, and upon redirect, examination, is clear. His contention was that good crops of fruit, particularly figs, could be produced on the land, but orcharding had not been profitable upon any of the land in question because of adverse market conditions. Manifestly upon cross-examination counsel sought to discredit his testimony by

getting him to say that orcharding had not been profitable upon these Rio Linda lands without having him explain that he meant that the want of profit was due to bad market conditions; and that explanation, in harmony with his original testimony, was made on redirect. Commenting upon the testimony of this witness, the court advised the jury:

"As a matter of fact the defendant's horticulturist Mr. Jarvis or Mr. McNaughton testified that on Rio Linda there are no profitable orchards; no profitable orchard, fruit orchards in Rio Linda, Mr. McNaughton testified for the defendant. He is the defendant's horticulturist, adviser; he testified that on cross-examination. On redirect examination he was asked directly if he did not refer to market conditions by reason of the fact that they were not profitable, and he said that is it, that the market conditions are very poor and prevail all over the state; whether there have been any profitable orchards over the state we do not know; in fact other witnesses say there are profitable orchards other places in the state, so that it would not seem that necessarily the market conditions had all to do with the lack of profitable orchards in Rio Linda. But it will be for you to determine what weight to give to all this testimony on behalf of the defendant that the land is adapted to commercial orcharding."

Following the definition of "commercial orcharding," which, as we have seen, involved the factor of profitableness, the court repeatedly advised the jury that the underlying issue was as to whether or not the representation made by the defendant that the land was well adapted to commercial orcharding was false, though the only averment of the complaint touching representations to induce the plaintiff to purchase had to do with the quantity and quality of the fruit which the land was capable of producing, and not profitableness.

Reversed.